**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEAN DE DIEU SIMO,<br>*Plaintiff*,<br>v.<br>JD EUROWAY BANCORP & TRUST, et al.,<br>*Defendants*. | Civil Action No. 25-1984 (TJK) |

**MEMORANDUM OPINION & ORDER**

Jean De Dieu Simo, a citizen and resident of Cameroon, alleges that JD Euroway Bancorp & Trust and its owners, Zephir and Astou Fritz, agreed to transfer nearly a million dollars of Simo's into an investment account in the United States. Simo alleges that they took his money but never upheld their end of the bargain. So he sued to recover his funds. Simo served JD Euroway nearly a year ago, but the company did not respond to the complaint or appear to defend itself. After obtaining an entry of default, Simo now moves for default judgment against JD Euroway (but not the Fritzes, whom he has not yet successfully served). He seeks $970,000 in damages plus interest, attorneys' fees and costs, and other relief. For the reasons explained below, the Court will grant Simo's motion in part, enter judgment against JD Euroway on Simo's well-pleaded claims (and decline to do so on others), and award Simo damages and post-judgment interest.

## I. Background

Simo alleges that the Fritzes agreed to transfer his funds into his investment account in the United States through their corporation, JD Euroway, in connection with a separate agreement Simo entered into with a financial consulting firm. ECF No. 1 ("Compl.") ¶¶ 11, 12–15, 18. In July 2021, Simo wired a large sum to JD Euroway with instructions to transfer the bulk of it—

$970,000 in Central African francs (CFA)—to his investment account. *Id.* ¶¶ 16, 18. But, Simo says, the Fritzes and JD Euroway—collectively, "Defendants"—never deposited those funds into his investment account. *Id.* ¶ 19. Nor did they respond to "numerous follow-up requests . . . to transfer . . . or refund" the money. *Id.* About three months later, Zephir Fritz "acknowledged his failure to perform the mandate in a notarized letter" and promised to return the funds within a few weeks. *Id.* ¶ 21. Still, Defendants did not return the funds or respond to Simo's repeated requests to do so. *Id.* ¶¶ 22–23. Indeed, Simo alleges, Defendants "never intended to carry out the transfer or refund the funds." *Id.* ¶ 26. Rather, "the assurances of payments were" "part of a deliberate fraudulent scheme" "intentionally engineered to lure [Simo] into believing he w[ould] be refunded." *Id.*

In June 2025, Simo sued Defendants, asserting one federal law claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) statute, 18 U.S.C. § 1962(c), and nine common-law claims: fraud, constructive fraud, negligent misrepresentation, civil conspiracy, breach of contract, conversion, unjust enrichment, breach of fiduciary duty, and promissory estoppel. Compl. at 5–12. Four months later, Simo filed purported proof of service as to JD Euroway, *see* ECF No. 8; ECF No. 9 ¶ 7; Fed. R. Civ. P. 12(a)(1)(A)(i). After the company failed to respond, Simo requested an entry of default, which the Clerk of Court entered on December 11, 2025. *See* ECF Nos. 9–10. Simo now moves for default judgment against JD Euroway. ECF No. 13. He seeks $970,000 in damages, pre- and post-judgment interest, attorneys' fees and costs, disgorgement, and restitution. ECF No. 13-1 at 2.

## II. Legal Standard

Under Federal Rule of Civil Procedure 55, there is a "two-step procedure" for obtaining a default judgment. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 (D.D.C. 2015).

First, after a defendant "has failed to plead or otherwise defend," a plaintiff may request that the clerk of court enter default against that defendant. Fed. R. Civ. P. 55(a). Second, after default is entered, a plaintiff may move for a default judgment. Fed. R. Civ. P. 55(b)(2). "By providing for a two-step process, Rule 55 allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 n.1 (D.D.C. 2009); *see* Fed. R. Civ. P. 55(c).

An entry of default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).[1] But it "does not automatically establish liability in the amount claimed by the plaintiff." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). Rather, the Court "[must] make an independent determination of the sum to be awarded," *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), and it is afforded "considerable latitude" in doing so, *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67. A plaintiff bears the burden of proving its requested damages "to a reasonable certainty." *Id.* at 68. A plaintiff can meet this burden by submitting "detailed affidavits or documentary evidence" and

[1] Of course, the Court also has an "affirmative obligation" to determine whether it has subject-matter jurisdiction over the plaintiff's claims and personal jurisdiction over the defendant before entering default judgment. *See James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996); *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 21 (D.D.C. 2019). Both are satisfied here. Simo alleges that he is a citizen of the Republic of Cameroon, that JD Euroway is a Delaware corporation with its principal place of business in Washington, D.C., and that the amount in controversy exceeds $75,000. Compl. ¶¶ 7, 8, 18–19. Thus, the Court has diversity jurisdiction under 28 U.S.C. §§ 1332(a)(2), (c)(1). And Simo's allegation that JD Euroway has its principal place of business in Washington, D.C., is sufficient to establish the Court's personal jurisdiction over it. *See Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021); D.C. Code § 13-422.

are generally "entitled to all reasonable inferences from the evidence [they offer]." *Amrine Drywall*, 239 F. Supp. 2d at 30.

## III. Analysis

### A. Liability

Because default has been entered, JD Euroway is liable for the well-pleaded allegations in Simo's complaint. *Amrine Drywall*, 239 F. Supp. 2d at 30. Thus, the Court must determine whether his allegations state viable claims for relief. As explained below, the Court finds that Simo's complaint establishes JD Euroway's liability for some, but not all, of the claims it asserts.

#### 1. The Complaint Fails to State a Claim Under the Civil RICO Statute, or for Civil Conspiracy, Fraud, Constructive Fraud, Negligent Misrepresentation, or Breach of Contract

Beginning with Simo's lone federal-law claim, JD Euroway is not a proper defendant under the civil RICO statute, 18 U.S.C. § 1962(c), so it cannot be liable to Simo for a claim under that law. That statute "makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Suarez v. Compass Coffee LLC*, No. 25-cv-89 (SLS), 2025 WL 3062798, at *7 (D.D.C. Nov. 3, 2025) (quoting 18 U.S.C. § 1962(c)). And it "permits private plaintiffs . . . to collect damages" from such persons "for injuries arising from violations of [the Act]." *Murray v. Mulgrew*, 704 F. Supp. 2d 45, 47 (D.D.C. 2010). But it is "*person*[*s*]" conducting or directing the affairs of the enterprise who are liable under the Act, not *the enterprise* itself. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63 (2001) (emphasis added). In other words, the act distinguishes "between the RICO *defendant* and the RICO *enterprise*." *Id.* at 162 (emphasis added). Here, Simo alleges that JD Euroway is the "enterprise," while "Zephir G. Fritz and Astou

Fritz . . . conducted . . . and participated in th[at] enterprise's affairs through a pattern of racketeering activity." Compl. ¶¶ 54, 57. Thus, JD Euroway cannot be liable for a civil RICO offense under the theory set forth in the complaint.

Next, Simo's claim for civil conspiracy falters out of the gate. *See* ECF No. 13 at 2. Under District of Columbia law, civil conspiracy is not "independently actionable" but is merely a "means for establishing vicarious liability" for an "underlying tort." *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (citation modified).[2] Accordingly, his allegations sounding in civil conspiracy do not state a claim.

Moving on to fraud—for that tort, Simo must allege a "(1) a false representation[;] (2) made in reference to a material fact[;] (3) with knowledge of its falsity[;] (4) with the intent to deceive[;] and (5) an action that is taken in reliance upon the representation." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 860–61 (D.C. 1999) (citation modified). In addition, Federal Rule of Civil Procedure 9 imposes a heightened pleading standard for fraud claims. It requires fraud claimants to "identify [the] individuals . . . involved in the fraud" and "state the time, place and content of the false [representations], the fact misrepresented and what was retained or given up

[2] Of the 10 counts asserted in the complaint, only Simo's civil RICO claim arises under federal law. Thus, the Court exercises diversity jurisdiction over Simo's nine common-law claims against JD Euroway. To determine JD Euroway's liability for those claims, the Court must first determine what state law applies to them. *See Farina v. Sanders*, No. 21-cv-2593 (TJK), 2023 WL 2265149, at *4–5 (D.D.C. Feb. 28, 2023). A federal court sitting in diversity applies the substantive law of the jurisdiction in which it sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). Choice-of-law rules are substantive, so the Court must apply the District of Columbia's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "Generally, when parties do not raise the issue of the applicability of foreign law, a court is under no obligation to apply foreign law and may instead apply the law of the forum." *Rymer v. Pool*, 574 A.2d 283, 285 (D.C. 1990). Here, Simo does not address choice of law in his motion for default judgment. So the Court will apply District of Columbia law to his common-law claims. *Cf. In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions sua sponte.").

as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). In short, Simo must state the "who, what, when, and where." *United States v. Novo Nordisk Inc.*, No. 21-cv-55 (RJL), 2026 WL 880085, at *4–5 (D.D.C. Mar. 31, 2026).[3]

Simo's allegations do not satisfy this standard. First, Simo alleges that Defendants falsely "provided assurances that they would transfer [the] $970,000[] entrusted to them." Compl. ¶ 29. But he does not identify *who* said *what*. Rather, Simo "repeatedly refers to the defendants collectively without indicating which action[] each individual defendant took . . . [thereby] fail[ing] to identify with specificity *who* precisely was involved in the fraudulent activity." *United States ex rel. Bailey v. Veterans Med. Transcription Servs.*, No. 23-cv-7171, 2024 WL 4864480, at *1 (D.C. Cir. Nov. 22, 2024) (citation modified); Compl. ¶¶ 28–33. Second, Simo does not pinpoint when the purported "assurances" were made. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (holding that the plaintiff satisfied Rule 9 by, among other things, "attribut[ing] the [alleged] misrepresentation to a particular period of time"). Third, Simo only alleges that Defendants made "assurances" that they would transfer the money, Compl. ¶ 29, but he does not identify "the specific content of the[ir] misrepresentations," *Poblete v. Rittenhouse Mortg. Brokers*, 675 F. Supp. 2d 130, 136 (D.D.C. 2009) (citation omitted); *see U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257–58 (D.C. Cir. 2004) (affirming that plaintiff's "obscure" descriptions of the "fact misrepresented" did not state a claim for fraud).

[3] "D.C. courts similarly require that fraud claims be pled with particularity." *McCallister v. Walton L. Grp., LLC*, No. 26-cv-9 (SLS), 2026 WL 2176883, at *4 (D.D.C. July 29, 2026) (citing *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1135 (D.C. 2012)). Indeed, Rule 9 of the District of Columbia Superior Court Rules of Civil Procedure and Federal Rule of Civil Procedure 9 are virtually identical. *Compare* Fed. R. Civ. P. 9, *with* Sup. Ct. Civ. R. 9.

For all these reasons, Simo has not alleged, with particularity, a false representation that induced him to transfer the funds to JD Euroway. That failure is fatal to his fraud claim, as it is for his constructive fraud claim, which "includes all the same elements as actual fraud except the intent to deceive." *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 50 (D.D.C. 2012) (citation modified). It also dooms his negligent misrepresentation claim. Under District of Columbia law, "the elements of a claim of negligent misrepresentation are similar [to fraud], except that they do not include the *scienter* requirements of a fraud claim." *Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 240 (D.D.C. 2011). For that claim too, Simo must allege—with particularity—a negligent misrepresentation made by JD Euroway. But as the Court explained, he has not done so. For all these reasons, Simo cannot recover against JD Euroway for fraud, constructive fraud, or negligent misrepresentation.

Finally, to assert a breach-of-contract claim, Simo must plausibly allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by [the] breach." *Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C. Cir. 2021) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). "[A] complaint must allege facts from which the necessary [elements of contract formation] can be found or reasonably inferred." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 38 (D.D.C. 2013); *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007). One of those elements is consideration, *see Sisco v. GSA Nat. Cap. Fed. Credit Union*, 689 A.2d 52, 56 (D.C. 1997), and "the consideration is not sufficient unless the [offeree] receives something of value to which he or she had no previous right," *GLM P'ship v. Hartford Cas. Ins. Co.*, 753 A.2d 995, 999 (D.C. 2000) (citation modified). But here, Simo does not allege that he offered JD Euroway anything in return for transferring his funds. Rather, he alleges that he "authorized" JD Euroway to assist with the

transfer, that he directed his bank to wire the money to JD Euroway, and that he instructed Defendants to transfer the funds into his investment account. Compl. ¶¶ 14, 16, 18. But he does not allege that JD Euroway received—or was offered—anything in return.[4] In sum—no consideration, no contract, and so no breach of contract.

**2. The Complaint States a Claim for Conversion, Unjust Enrichment, Breach of Fiduciary Duty, and Promissory Estoppel**

To recover for unlawful conversion, Simo must allege that JD Euroway committed "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (citation modified). As relevant here, "[m]oney can be the subject of a conversion claim when the plaintiff has the right to a specific[,] identifiable fund of money." *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 62–63 (D.D.C. 2002), *aff'd in part, remanded in part sub nom. Gov't of Rwanda v. Johnson*, 409 F.3d 368 (D.C. Cir. 2005). And "when the [defendant's] initial possession [of the funds] is lawful, the plaintiff must make a demand for the return of th[ose] [funds] to demonstrate the adverse nature of the possession." *Id.* at 62. Simo's allegations fit the bill. He asserts that he authorized JD Euroway to take possession of his funds for the sole purpose of transferring them into his investment account. Compl. ¶¶ 15–18. But, rather than doing so, he says that JD Euroway kept the funds and has refused to return them despite repeated requests. Compl. ¶¶ 21–23; *cf. Gov. of Rwanda*, 227 F. Supp. 2d at 62–63. Accordingly, Simo's allegations state a claim for conversion against JD Euroway.

[4] True, Simo says that he instructed Defendants to transfer 543,000,000 CFA to his investment account—slightly less than the full 620,000,000 CFA sum he wired to JD Euroway. *Id.* But he does not allege that the difference was intended as payment to Defendants.

Simo may also recover for unjust enrichment. "Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005); *see also Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813–14 (D.C. 2009). Here, Simo alleges that he conferred a benefit on JD Euroway—*i.e.*, $970,000—but the company "failed to refund any portion of the [money]" despite his "repeated efforts to recover his funds." Compl. ¶¶ 16, 22. That gets him two-thirds of the way there. *See JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 523 (D.D.C. 2014) (holding allegations that the defendant "retained" $600,000 from plaintiff's investment fund "in spite of [plaintiff's] demands for its return" satisfied an unjust enrichment claim's "first two elements"). And Simo's assertion that it is "unjust [for JD Euroway] to retain the funds without repayment" satisfies the third element. *See McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp. 2d 101, 107 (D.D.C. 2010) (holding the plaintiff's assertion that the defendant's conduct was "unjust, unfair, and unequitable" satisfied third element at the pleading stage); Compl. ¶ 47. Accordingly, Simo's allegations establish JD Euroway's liability for unjust enrichment.

Simo's breach-of-fiduciary duty claim also succeeds. Under District of Columbia law, to state a claim for breach of fiduciary duty, a plaintiff must allege facts sufficient to establish that "(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) to the extent plaintiff seeks compensatory damages—the breach proximately caused an injury." *Paul v. Jud. Watch*, 543 F. Supp. 2d 1, 5–6 (D.D.C. 2008) (citing *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 75 (D.D.C. 1998)). As relevant here, "there can be no question as to the existence of [a] fiduciary capacity in a case where [an] agent has been entrusted with money to be used for a specific purpose," *Wagman v. Lee*, 457 A.2d 401, 405 (D.C. 1983) (citation

modified). That is what Simo alleges here—*i.e.*, that he entrusted JD Euroway with his funds for the specific purpose of transferring them into his investment account. Compl. ¶¶ 14–18, 76. That JD Euroway failed to do so establishes a breach of that duty. *Id.* ¶¶ 19, 22. And there is no question that the company's breach proximately caused Simo's $970,000 in damages. Indeed, that is precisely the amount JD Euroway failed to transfer and adversely retained in violation of the parties' purported agreement. *Id.* Thus, Simo has established JD Euroway's liability for breaching a fiduciary duty.

Finally, the Court finds that Simo may recover for a claim for promissory estoppel. To succeed on a promissory estoppel claim, Simo must allege that there was a promise between the parties, that the promise reasonably induced his reliance on it, and that he relied on the promise to his detriment. *See Simard v. Resol. Tr. Corp.*, 639 A.2d 540, 552 (D.C. 1994); *see also Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95–96 (D.D.C. 2004) (noting that promissory estoppel does not require a bargained-for exchange under District of Columbia law). Simo's complaint covers all bases. He alleges that JD Euroway "agreed to receive and transfer $970,000[] to [his] U.S. investment account"—and, accordingly, the company had a clear "mandate" to do so. Compl. ¶¶ 15, 35. Relying on Defendants' "promises and representations" that "the funds would be made available and would be forthcoming as a credit to him," Simo transferred them to JD Euroway. *Id.* ¶ 84. That decision, Simo alleges, has detrimentally deprived him of his $970,000, which have "neither been wired to [his] U.S. investment account [n]or refunded to [him]." *Id.* ¶ 85. So, Simo has stated a claim against JD Euroway under the promissory estoppel doctrine.[5]

[5] The Court notes that Simo's viable claims all have a three-year statute of limitations, which could bar them. *See* D.C. Code § 12-301. But this cut-off is not jurisdictional. *See Brin v. S.E.W. Invs.*, 902 A.2d 784, 800 (D.C. 2006) ("Normally, a statute of limitations erects no

**B. Damages and Equitable Remedies**

With liability established as to four of Simo's claims, the Court must now determine the amount of damages and other relief to award. For the following reasons, the Court finds that the record supports only Simo's entitlement to $970,000 plus post-judgment interest.

Simo must prove his damages to "a reasonable certainty." *Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d at 68. And when, as here, a defendant has failed to respond, the Court must make an "independent determination . . . of the sum to be awarded." *Ventura*, 134 F. Supp. 3d at 104. Simo has established JD Euroway's liability for conversion, unjust enrichment, breach of fiduciary duty, and promissory estoppel—entitling him to recover damages on those claims. Compl. ¶¶ 41–44, 47–48, 78, 81–86. And Simo's declaration sets forth the $970,000 amount with specificity. *See* ECF No. 13-2 at 1. Indeed, that is the very sum Simo purportedly sent to JD Euroway which the company has unlawfully retained. ECF No. 13-2 at 2; Compl. ¶¶ 14, 18, 22. Thus, the Court will grant Simo default judgment against JD Euroway and award $970,000 in damages.

The Court also finds that Simo is entitled to post-judgment interest on that award. "Post-judgment interest is governed by federal law, even in a case in which a federal court hears only state-law claims." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 165 (D.D.C. 2013); 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in district court."). That interest is "calculated from the date of the entry

jurisdictional bar . . . . Rather, [it provides] . . . an affirmative defense which . . . must be set forth affirmatively in a responsive pleading, and may be waived if not promptly pleaded.") (citation omitted). "[S]o it does not implicate the Court's power to decide the case." *Does v. Democratic People's Republic of Korea*, No. 23-cv-273 (TJK), 2026 WL 1493562, at *12 (D.D.C. May 28, 2026) (citing *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1108 (D.C. Cir. 2019)). Thus, the Court is "under no *obligation* to raise the time bar *sua sponte*," and declines to do so here. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see LaRue v. Johnson*, No. 16-cv-504 (RMW), 2018 WL 1967128, at *5 n.4 (D.D.C. Feb. 22, 2018) (declining to apply "D.C.'s one year statute of limitations" sua sponte and granting default judgment on plaintiff's defamation claim).

of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). The Court therefore grants Simo's request for post-judgment interest on his $970,000 damages award at the statutory rate.

Simo asks the Court for more, but the record does not support his requests. To begin, he asks for prejudgment interest. *See* ECF No. 13-1 at 2. "In the District of Columbia, an injured party in an action sounding in tort may recover prejudgment interest 'to the extent that it will make the injured party whole.'" *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 13 (D.D.C. 2013) (quoting *Duggan v. Keto*, 554 A.2d 1126, 1140 (D.C.1989)); *see also* D.C. Code § 15-109 (2012). And where, as here, "a plaintiff has been deprived of the use of money that has been withheld, prejudgment interest 'is an element of complete compensation for the loss of use of such money.'" *Ugwuonye*, 297 F.R.D. at 13 (quoting *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990)); *see also id.* (awarding prejudgment interest on claims of conversion and unjust enrichment). But even in cases where prejudgment interest is permitted, "[a] trial court has wide discretion in awarding [it]," *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 164 (D.D.C. 2013), and must "balance the equities in each case to determine whether pre-judgment interest is appropriate," *Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 267 F. Supp. 3d 205, 210–11 (D.D.C. 2017) (citation modified). "Relevant considerations include whether the plaintiff has been deprived of the use of the money withheld, whether he timely commenced suit, and the certainty of the amount due." *Winder v. District of Columbia*, 555 F. Supp. 2d 103, 111 (D.D.C. 2008), *aff'd sub nom. Winder v. Erste*, 566 F.3d 209 (D.C. Cir. 2009).

While the first consideration favors Simo, the other two—at least on the current record—do not. First, Simo was hardly diligent in commencing this action. According to the complaint, the relevant conduct took place in mid-2021. *See* Compl. ¶¶ 12–27. That is when he transferred the funds to JD Euroway and, it seems, first requested their return. *Id.* But Simo waited about four years before filing suit, and nowhere does he explain the reason for this delay. *See* ECF No. 1. Second, the Court lacks sufficient information to determine the appropriate amount of prejudgment interest (if any) to award. Indeed, Simo does not allege a clear date upon which his claims accrued, nor does he explain what interest rate the Court should apply in calculating the total amount due.[6] For all these reasons, the Court declines to award Simo prejudgment interest.

In addition to damages and interest, Simo also requests disgorgement. *See* ECF No. 13-1 at 2. Disgorgement is an equitable remedy intended to "deprive a wrongdoer" from the proceeds, profits, and other "ill-gotten gains" derived from his unjust enrichment. *United States v. Philip Morris*, 310 F. Supp. 2d 58, 63 (D.D.C. 2004); *see Griffith v. Barnes*, 560 F. Supp. 2d 29, 35 (D.D.C. 2008) ("When there is unjust enrichment, disgorgement is an appropriate remedy."). A party seeking disgorgement "has the burden of demonstrating that the proposed disgorgement figure reasonably approximates the amount of illegally obtained profits." *Griffith*, 560 F. Supp. 2d at 35. But the Court is already awarding Simo the $970,000 that JD Euroway unlawfully retained, and Simo does not allege that JD Euroway gleaned any profits from those funds.[7] Thus, the Court will deny his request for disgorgement.

---

[6] For instance, Simo does not say whether the Court should apply the 6 percent rate provided under D.C. Code § 28–3302(a) or some other rate.

[7] Simo also requests "restitution." ECF No. 13-1 at 2. The remedies of disgorgement and restitution are cut from similar cloths. *See Liu v. SEC*, 591 U.S. 71, 79 (2020) ("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity, even though that remedy may have gone by different names," including "accounting," "disgorgement," and

Finally, Simo requests an award of attorneys' fees and costs. But he "ha[s] not provided any information regarding the fees and costs sought." *Winternitz v. Syrian Arab Republic*, No. 17-cv-2104 (TJK), 2022 WL 971328, at *12 (D.D.C. Mar. 31, 2022) (citation omitted). So the Court cannot award them either.

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Simo's Motion for Default Judgment, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**. Judgment is **ENTERED** for Simo and against JD Euroway Bancorp & Trust for unjust enrichment, conversion, breach of fiduciary duty, and promissory estoppel in the amount of $970,000 in damages plus post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 4, 2026

"restitution."). That said, some courts have distinguished them as follows: "[R]estitution is [ordered] to restore aggrieved parties to the position that existed before the . . . wrongful [conduct] occurred by compensating them for [the] loss caused by the conduct," while "[d]isgorgement . . . requires a defendant to surrender all of its profits from [the] unlawful [conduct]." *United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 547, 576 (D.N.J. 2004), *aff'd*, 427 F.3d 219 (3d Cir. 2005). In any case, the Court's award of $970,000 in damages affords Simo the restitution he seeks.